# Samuel B. Dick et al., Appts., v. David Bovaird et al.

A contract to render a patentee monthly statements of all articles made
during the previous month and to whom sold, with an agreement to pay
a royalty for each article so made during the preceding month, will not
include unmerchantable articles, under a fair construction of the agree-
ment.

In a bill in equity for an account of royalties on patented articles man-
ufactured, articles made in violation of the agreement, but not under the
letters patent, cannot be included in the account.

A patent drilling jar of combined iron and steel, in which the hammer

NOTE.—For the former proceeding in this case, see Bovaird v. Dick, ante,
69

Parol evidence may be offered to show an agreement collateral to the
written one, when not in variance with it. Parcell v. Grosser, 109 Pa. 617,
1 Atl. 909; Nye v. Pittsburg County, 2 Pa. Super. Ct. 384; Bartley v.
Phillips, 165 Pa. 325, 30 Atl. 842.

tace which receives the blow is of steel, and the link bars lined with steel, to avoid friction, and the balance of the link bars of iron, to obtain tensile strength, will not include a drilling jar with the hammer face of steel and the link bars of steel.

Parol evidence to change a written contract considered.

(Decided May 31, 1886.)

Appeal and certiorari to review a judgment of the Common Pleas of McKean County in equity. Affirmed.

This was an appeal by Samuel B. Dick and the Gibbs & Sterrett Manufacturing Company from the same decree reported in the next preceding case. The facts are stated in the report of that case.

The defendants alleged at the hearing before the master, that at and before the execution of the contract of license, a parol agreement was entered into between themselves and Mr. Sterrett, on behalf of the plaintiffs, that broken jars should not be taken into account, nor royalty paid on them. The evidence on this point was as follows:

R. H. Sterrett testified:

"I am acquainted with the Gibbs & Sterrett Manufacturing Company, and was in October, 1878. I was a director of said company at that time, and so continued to the present. . . . In October, 1878, the 16th, I was at the shops of Bovaird & Seyfang in Bradford, Pennsylvania, and issued to them this license. (The paper offered.) I was acting as the agent of the Gibbs & Sterrett Manufacturing Company and S. B. Dick in the matter. This is my signature as subscribing witness to said paper. I am acquainted with the signature and handwriting of S. B. Dick. I should say this is his signature. I have seen it a great many times. I signed the "Gibbs & Sterrett Manufacturing Company" for them. I saw Bovaird and Seyfang sign the paper referred to at their office in Bradford, Pennsylvania. Bovaird and Seyfang were both present at the time of the execution of this contract, signed by one in the presence of the other, and in my presence. The paper was executed in duplicate. I took one of the papers and Bovaird & Seyfang took

the other. I can't say which one of them signed the paper. They were both there. The Gibbs & Sterrett Manufacturing Company was a corporation and had a common corporate seal. I had not at that time any other office of the corporation except director. I think I saw Dick sign the paper. Dick was not present when Bovaird and Seyfang signed it. I signed it for the company, and then witnessed it. In relation to my conduct and management of their affairs in regard to this patent at and prior to October, 1878, the president, treasurer, and secretary of the company told me that I could give licenses to parties who were making jars, and that I should do so and look after the company's interest in that patent. This was in connection with Mr. Dick's part. It was mutually agreed by both parties that I should represent them, to report to them and pay one half the money that was collected to them and the other half to Mr. Dick, which I did."

*Q.* "I wish to call your attention to the statement of Mr. Seyfang at a former hearing in this case as follows: 'We objected to the contract as printed, raising the question of broken jars; and refused to sign the contract until it was agreed by the licensors to exclude these, to which condition he agreed.' What do you say as to that statement?"

*A.* "I never agreed that they should have any credit for broken jars. The question wasn't raised. I have seen Exhibit A, the license in this case. On the date of the license, before the execution of the license, I exhibited it to the defendants, executed by Mr. Dick. They examined it and read it. They objected to some of its provisions. . . . The only and principal objection that was made, and that they talked more about and dwelt on more than any other (I think Mr. Bovaird was more particular about it than Mr. Seyfang), was the printed clause in the license requiring them to report and pay royalty on the 5th of every month, on all jars made and sold during the preceding month, and wanted me to change that so that it would read, not earlier than the 10th or 15th of the month. Their reasons for that was that they could not, or might not, get in their collections so early in the month. I told them that I could not make any changes in the printed form of the license; that I

never had and would not, as I had no right to or authority; but, in addition, I said, that being the only or the principal objection, I would promise them that they could have until the 10th of the month to report, and if they paid their royalty and made their report by the 10th of the month I would make them no trouble. I think there were no other objections made by them to the printed form. I cannot recall any other. The same day the license was executed in duplicate."

J. L. Seyfang testified:

"Prior to our signing of the contract, we objected to the contract as printed,—raising the question of broken jars, the injustice of paying royalty on the same. The question was involved, and we refused to sign that contract until it was agreed by the licensors, by Mr. Sterrett their representative, and to which condition he agreed before our signature to that contract,—that was that we would not pay and were not to pay for broken jars. This was before we signed the contract, and after that agreement we signed the contract. . . . Upon representation of these facts, as before stated, and with the understanding before testified to, the defendants in this case, Bovaird & Seyfang, signed that article of agreement."

All of the foregoing answer was objected to for the reason that it purported to have relation to conversations and promises of an agent, and was collateral and incompetent.

It was admitted on the part of the counsel for the plaintiffs that R. H. Sterrett acted as agent of the plaintiffs in the execution of the partly printed and partly written contract of the parties in evidence here, and to collect the royalties thereunder, but not as their agent for any undertakings other than those described; that for this purpose the contracts were printed in blank and executed by Samuel B. Dick, one of the plaintiffs, and committed to Mr. Sterrett for execution by the other parties; and plaintiffs denied that there was any authority to Mr. Sterrett to modify the terms of the contract in any way.

Witness: "No one of the plaintiffs but Mr. Sterrett called upon us in this matter. I remember four interviews with Mr. Sterrett before we signed the contract. We never received any communications from the plaintiffs, nor wrote any concerning

this matter. . . . I think I signed the contract on the day
it is dated. The conversations with Mr. Sterrett were at our
office in Bradford. The first one was about six weeks prior to
the execution of the contract. I did not send for him. The
next was probably one or two weeks after the first. The next
was some time after; I cannot state how long. The last time,
the fourth, was when the contract was signed. I had not asked
him to come, nor written to him. I did not write to the plain-
tiffs, nor any of our concern, asking for license. I can't say
that Mr. Sterrett exhibited the blank contract at the first con-
versation. I think he did at the second. Mr. Sterrett and I
had a talk. He did not say he could not change any of the terms
of the contract, that he had no authority to; nor did he say that
he would not change the terms. I told Mr. Sterrett that, if we
were expected to pay for broken jars, we wouldn't sign the con-
tract. I don't remember whether or not I asked him to change
the words of the contract."

David Bovaird testified as follows:

*Q.* "State if you were present at any of the conversations
with the representative of Dick and the Gibbs & Sterrett Manu-
facturing Company prior to and at the time of the signing of
the license upon which this suit was brought."

*A.* "I was. I couldn't be positive whether I was present on
the day the license was signed, but I think I was.

*Q.* "State, Mr. Bovaird, any conversation that there was be-
tween the representative of the plaintiffs and the defendants;
and any representations made by him to induce you and your
partner to sign that license; or any agreement that he made
with you concerning what jars royalty should be charged upon."

Objection on the part of the plaintiff on the same ground as
to similar question to Mr. Seyfang on the same subject, and this
objection is to apply to all questions touching the same subject-
matter.

*A.* "We had a talk, Mr. Sterrett, Mr. Seyfang, myself. We
would not pay for broken jars. Mr. Sterrett made a remark
that he couldn't warrant our jars. We told him we didn't ask
him to warrant our jars, but if we had to pay for broken jars we
shouldn't sign that contract. Now I don't know whether it was

at that time that the contract was signed, because there were two or three times that I was present and it was talked about. We had not been manufacturing jars, but we had a jar maker hired to make them. Before the signing of that contract Mr. Sterrett said that we wouldn't need to pay for broken jars, and that he would protect us; that if any were manufactured that were not paying royalty, there would be suits started to make them pay it."

The master found from the evidence as follows: "This parol agreement is denied by Mr. Sterrett; but it is positively stated by both Seyfang and Bovaird and must, therefore, be considered established by a preponderance of testimony. . . . The parol agreement proved neither contradicts nor alters the written license. Under the latter, as already construed, royalty was to be paid only upon jars sold; and a conditional sale, therefore, if the conditions should not be fulfilled, would not be subject of royalty."

The plaintiffs excepted to these findings by the master, and the court overruled the exceptions.

The assignments of error raised the questions whether 197 of the jars were made under the letters patent, and whether or not they should be included in the account; and whether broken or defective jars should also be included.

*Joshua Douglass* and *W. B. Chapman & Son,* for appellants. —The injunction restraining the defendants from selling drilling jars of any other patent or make than those held by plaintiff was in aid of the legal right. Kerr, Inj. 493; McClurg's Appeal, 58 Pa. 51; Butler v. Burleson, 16 Vt. 176; Beard v. Dennis, 6 Ind. 200, 63 Am. Dec. 380.

The defendants are not permitted to deny the use of the patented article. Palmer's Appeal, 96 Pa. 106; Curtis, Patents, 215; Baird v. Neilson, 8 Clark & F. 726.

When a court of equity acquires control of a case, it will determine every feature of dispute in the transaction. Brightly, Eq. § 124; 1 Story, Eq. § 457; Bank of United States v. Biddle, 2 Pars. Sel. Eq. Cas. 52; McGowin v. Remington, 12 Pa. 56, 51 Am. Dec. 584; Shollenberger's Appeal, 21 Pa. 337; Brightly's Digest, 3175.

The testimony of the defendants is not sufficient to justify a reformation of the contract.

To reform the contract "the evidence of fraud or mistake ought to be of what occurred at the execution of the agreement; and should be clear, precise, and indubitable." Martin v. Berens, 67 Pa. 463; Stine v. Sherk, 1 Watts & S. 195; Miller v. Smith, 33 Pa. 386.

Parol evidence is admissible to support allegations of mistake, surprise, or fraud. The remedy, however, is applied reluctantly and cautiously; and only on strong proof that the reformation was one intended, and was prevented only by mutual mistake, surprise, or fraud. 2 Wharton, Ev. § 1019; Sugden, Vendors, 8th Am. ed. 262; Kerr, Fraud, 423; Walker, Patents, 220, § 303; Curtis, Patents, 584, § 438.

The evidence of Mr. Sterrett's agency to bind his principals was not sufficient. Story, Agency, pp. 124, 125, 116, § 127, note 2; Smith, Mercantile Law, 59.

When parties without fraud or mistake have put their engagements in writing, that is not only the best, but the sole, evidence of their agreement. Martin v. Berens, 67 Pa. 459; 2 White & T. Lead. Cas. in Eq. part 1, pp. 944–960; Bispham, Eq. 438, § 381; 1 Story, Eq. 151–164.

Parol evidence is not admissible to contradict or vary written instruments unless: (1) There has been fraud, accident, or mistake in the creation of the instrument itself; or (2) unless there has been an attempt to make a fraudulent use of the instrument, in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed. Rowand v. Finney, 96 Pa. 192; Barnhart v. Riddle, 29 Pa. 92; Hill v. Gaw, 4 Pa. 493; Stine v. Sherk, 1 Watts & S. 195; Anspach v. Bast, 52 Pa. 356; Spencer v. Colt, 89 Pa. 314; Hacker v. National Oil Ref. Co. 73 Pa. 93; Thorne v. Warfflein, 100 Pa. 519; Miller v. Smith, 33 Pa. 386; Kostenbader v. Peters, 80 Pa. 438; Graver v. Scott, 80 Pa. 88; Wagner v. Wright, 10 W. N. C. 483.

The late case of Phillips v. Meily, 106 Pa. 536, contains a clear definition of the principles which courts in this state apply

to cases where there is an attempt to modify a written contract by parol.

*James C. Boyce,* for appellees.—The finding of facts by a master, approved by the court below, will only be set aside for. plain error. Kisor's Appeal, 62 Pa. 428; Phillips's Appeal, 68 Pa. 130; Sproull's Appeal, 71 Pa. 137; Clarkson v. Norton, 31 Phila. Leg. Int. 277; Shoemaker v. Mutual Live Stock Ins. Co. 32 Phila. Leg. Int. 264; Crowell v. James, 32 Phila. Leg. Int. 420; and Trexler v. Mennig, 33 Phila. Leg. Int. 321; Walton v. Whann, 8 Legal Gaz. 82; Winton v. Mott, 4 Luzerne Legal Reg. 71.

The evidence of the parol agreement that broken jars should not be paid for was properly admitted.

Parol evidence may be given to explain a written agreement, so far as to give locality and identity of the subject-matter and to apply the contract to it. Bertsch v. Lehigh Coal & Nav. Co. 4 Rawle, 130; Nixon v. M'Callmont, 6 Watts & S. 159; Gould v. Lee, 55 Pa. 99.

To materially vary or contradict a written contract, by evidence of a contemporaneous parol agreement, it must be alleged that the contract was executed on the faith of the parol agreement. Callan v. Lukens, 89 Pa. 134; Parsons v. Adeler, 8 W. N. C. 72.

Mr. Seyfang and Mr. Bovaird both testify that, if the parol agreement had not been made, the contract would not have been signed. But, apart from the parol agreement, it is only a reasonable construction of the license that it applies to only sound, merchantable jars. It would be inequitable to require the defendants to pay two royalties on only one actual and consummated sale. When the manufacturer replaces a defective set by a sound set, it is evident that there is a sale made of a second set, which would not have been sold, if the first set was good.

The agreement is to be construed most strictly against the plaintiffs as a lease is construed most strongly against the landlord. Com. *ex rel.* McNeile v. Philadelphia County, 3 Brewst. (Pa.) 537.

This contract was in restraint of trade. Therefore equity

will not enforce it, but the plaintiffs must be left to their remedies at law.    Keeler v. Taylor, 53 Pa. 467, 91 Am. Dec. 221; Gompers v. Rochester, 56 Pa. 194; Harkinson's Appeal, 78 Pa. 196, 21 Am. Rep. 9; Gillis v. Hall, 2 Brewst. (Pa.) 342.

PER CURIAM:

We think a fair construction of the contract imposed no obligation upon the appellees to account for and pay royalty on jars not merchantable.    This agrees with the finding of the master and the conclusion of the court.    It was correctly held that the parol evidence was not sufficient to change the written contract.

We see no error in the decree.

Decree affirmed and appeal dismissed, at the costs of the appellants.